IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| QIANG WEI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:12-CV-00872-RCL |
| | § | |
| SOUTHWEST RESEARCH INSTITUTE, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT SOUTHWEST RESEARCH INSTITUTE'S
PROPOSED STIPULATIONS OF FACT**

NOW COMES Defendant Southwest Research Institute ("the Institute") and submits the following Proposed Stipulations of Fact for the purposes of the trial of this case:

1. The Institute is one of the oldest and largest independent, nonprofit, applied research and development organizations in the United States.

2. The Institute's Engine, Emissions and Vehicle Research Division ("Division 03") conducts design, development, and test programs on a wide range of components, engines, transmissions, and vehicles.

3. Bruce Bykowski serves as the Vice President in charge of Division 03.

4. Within Division 03 is the Emissions R&D Department (the "Emissions Department").

5. The Emissions Department performs particle science research and development on spark-ignited and compression ignition engines that are used in passenger cars, trucks and buses, and non-road engines used in agricultural and construction equipment.

6. At the time of Plaintiff's employment, Jeff White ("White") served as the Director of the Emissions Department.

7. Dr. Imad Khalek ("Khalek") was a Program Manager in the Emissions Department at the time of Plaintiff's employment.

8. Both Plaintiff and Khalek studied at the University of Minnesota under Dr. David Kittelson, a leading expert in particle science.

9. Khalek has a Bachelor's degree in aerospace engineering, a Master's degree in mechanical engineering, and a Ph.D. in mechanical engineering, all from the University of Minnesota.

10. Khalek is a native of Lebanon and speaks Arabic, French, and English.

11. Plaintiff considers Khalek a leading expert on particle science.

12. Khalek recruited Plaintiff to apply for a job with the Institute.

13. As part of the application process at the Institute, job candidates for high level positions such as Principal Engineer are required to make a short presentation before a panel of evaluators.

14. Several members of this panel, including Khalek, commented on their difficulty in understanding Plaintiff.

15. Despite Plaintiff's communication difficulties, Khalek highly recommended that Plaintiff be hired.

16. Jeff White, Khalek's supervisor also highly recommended that Plaintiff be hired.

17. Plaintiff was hired by the Institute as a Principal Engineer in Division 3 on November 8, 2010.

18. Plaintiff was employed with the Institute on an at-will basis.

19. At all relevant times, Plaintiff was under the supervision of Khalek

20. On June 13, 2011, Plaintiff was given a "Meets Expectation" initial performance evaluation.

21. Despite his "Meets Expectation" evaluation, Plaintiff was "encouraged to sharpen his skills in effective communications by engaging more laboratory staff and clients" and "to improve his writing and proposal writing skills by taking appropriate classes."

22. On or about June 24, 2011, Khalek gave Wei an assignment to write an Internal Research Proposal for an instrument that measures carbon in engine exhaust.

23. After receiving the completed proposal back from Wei, Khalek reviewed and suggested a few edits and thereafter gave it to White for further review.

24. The proposal eventually required a number of edits by White both in grammar and in construction and architecture of the document.

25. Around the same time, Plaintiff was not making progress on two other projects given to him by Khalek – a Real Time Ash Instrument Project and an EPA project.

26. In the Real Time Ash project, Plaintiff was focused on a "downstream" diluter of the ash measurement system instead of focusing on the ash measurement at the heart of the project.

27. In the EPA project, Khalek instructed Plaintiff to establish a target efficiency of 99 percent but Plaintiff disagreed with that target and stated that they could not achieve more than a 65 percent efficiency and that they should use a different coating on the materials for the project.

28. On August 4, 2011, Plaintiff was given a rating of "Needs Improvement" on his first annual performance evaluation.

29. Because of his performance deficiencies, Plaintiff was instructed to submit weekly written progress reports to Khalek of the work completed.

30. Furthermore, in light of the heavy editing required for his Internal Research proposal, Plaintiff was also told that his written communications must be "thoroughly reviewed by the supervisor for technical content, grammar, organization, etc."

31. In an effort to help him improve Plaintiff's communication skills, Khalek conveyed his expectation that Plaintiff was to speak English in the workplace when other non-Chinese speaking co-workers were present.

32. Plaintiff was not informed that he could never speak Chinese at the Institute, but he was requested to do so in a place and time that would not diminish his opportunity for development.

33. The Institute does not maintain an "English-only" policy.

34. In fact, Chinese is spoken by several individuals throughout the Emissions Department on a daily basis.

35. On August 5, 2011, Plaintiff met with Khalek and White to discuss his evaluation.

36. Plaintiff brought a hand-held recording device to this meeting and recorded the conversation, without informing White or Khalek that he was doing so.

37. White concluded that Plaintiff was not providing his best efforts in his position and that the performance evaluation properly assessed his level of performance.

38. White encouraged Plaintiff to communicate and cooperate with Khalek going forward.

39. Following the August 5, 2011 meeting and contrary to White's request that Plaintiff improve his communications with Khalek, Plaintiff began to only communicate with Khalek by e-mail.

40. Following the August 5, 2011 meeting, Plaintiff also began requesting step-by-step instructions from Khalek for his work, which was unacceptable for an employee of Plaintiff's experience and professional position.

41. Following the August 5, 2011 meeting, Plaintiff contributed to breaking parts on two laboratory instruments, rendering the instruments inoperable for a period of time.

42. Following the August 5, 2011 meeting, instead of working to improve his performance, Plaintiff exhibited a complete lack of performance and lack of responsiveness.

43. On August 8, 2011, Plaintiff sent Khalek an email in which he claimed to be attempting to "summarize" the workplace rules referenced in Plaintiff's August 4, 2011 annual evaluation.

44. Included in this August 8, 2011 summary was an alleged directive from Khalek stating that "English is the only language that can be used on the SwRI's campus" and that "[o]ther language aren't allowed even though the employee's office door is closed."

45. This August 8, 2011 summary regarding Khalek's directive was an intentional misstatement on Plaintiff's part as his August 4, 2011 annual evaluation contained no such statement or requirement.

46. Khalek responded to Plaintiff's August 8, 2011 summary by stating that what he had requested of Plaintiff was "already listed in [his] performance review sheet" and that some of the "rules" summarized by Plaintiff were of his "own making and interpretation."

47. After discussing Plaintiff's deteriorating performance with White and providing White with email evidence of Wei's uncooperative behavior and refusal to perform the tasks assigned to him, on August 12, 2011, Khalek recommended to White and Bykowski that Plaintiff's employment be terminated.

48. In his termination recommendation, Khalek noted that Plaintiff's "poor verbal communications skills have held him back in engaging with other technical and professional staff members."

49. Khalek also noted that Plaintiff received the lowest score in oral presentations at a recent conference.

50. Khalek noted that Plaintiff's performance had gone "downhill" since receiving the NI rating on his evaluation and that Plaintiff was now seeking daily work instructions and debating with Khalek over work assignments.

51. Further, Khalek noted Plaintiff's role in damaging two particle instruments.

52. Khalek never mentioned Plaintiff's speaking of Chinese on the Institute's campus as a reason for Plaintiff's termination.

53. White agreed with Khalek's recommendation to end Plaintiff's employment.

54. After reviewing alternative positions for Plaintiff at SwRI and finding none available, Bykowski accepted the recommendation for termination on August 16, 2011.

55. On August 18, 2011, Plaintiff sent an e-mail to White, Bykowski, Bruce Crumlett (Executive Director of Human Resources), and several Human Resources staff members titled, "Is this a health work environment?"

56. In this email, Plaintiff made no reference to Khalek's alleged statements regarding Plaintiff being prohibited from speaking Chinese at the workplace.

57. After reviewing the e-mail received from Plaintiff, the Institute's HR Department concluded that Plaintiff had not raised a reasonably-founded complaint of harassment.

58. On August 19, 2011, White provided a supplement to Plaintiff's termination recommendation to Bykowski.

59. White noted that instead of redoubling his efforts to address the deficiencies identified in the evaluation, Plaintiff "chose to be argumentative with [Khalek] regarding the details of his assignments" and that Plaintiff would "complete one small task and then request instructions as to what to do next."

60. In White's view, this type of behavior from an experienced Ph.D. was "completely inappropriate."

61. White also clarified that Khalek's statements regarding speaking Chinese was made "in reference to rudeness" and that White understood that Khalek, being a speaker of multiple languages himself, found it "rude to hold a private conversation in another language in the presence of others not speaking that language."

62. Khalek did not have anything to do with the drafting of White's supplemental recommendation.

63. Under the Institute's policies and procedures, once a termination recommendation is forwarded to HR by the head of a Division, a personnel action review committee or PARC Committee is formed to review the recommendation.

64. The PARC Committee considering Plaintiff's termination consisted of White, Bykowski, Jack Fernandi (Treasurer), Bill Crumlett (Executive Director of Human Resources), John McLeod (General Counsel), and Walter Downing (Executive Vice President).

65. The Committee was provided with the termination recommendation and documents supporting the recommendation, including the email exchange between Plaintiff and Khalek and Plaintiff's IR proposal with White's edits.

66. The Committee approved Plaintiff's termination on August 19, 2011.

67. On August 22, 2011, Bykowski and White met with Plaintiff to inform him of his termination based on his inability or unwillingness to perform the work for which he was hired.

68. In addition, Bykowski provided Plaintiff with a letter outlining the reasons for his termination.

69. As with the earlier meeting, Plaintiff recorded this conversation, again without informing Bykowski and White that he was doing so.

70. Plaintiff's termination was effective on August 22, 2011.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP


By: /s/ Mario A. Barrera
    Mario A. Barrera
    State Bar No. 01805915
    mario.barrera@nortonrosefulbright.com
    Stephen J. Romero
    State Bar No. 24046756
    stephen.romero@nortonrosefulbright.com
300 Convent Street, Suite 2100
San Antonio, Texas  78205
Telephone: (210) 270-7120
Telecopier: (210) 270-7205

Attorneys for Defendant
Southwest Research Institute

- 9 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of March, 2015, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Edith K. Thomas
Law Office of Edith K. Thomas, PLLC
777 Main Street, Suite 400
Fort Worth, Texas 76102

Glenn D. Mangum
Law Offices of Glenn Mangum
924 Camaron
San Antonio, Texas 78212

                                                            /s/ Mario A. Barrera
                                                            Mario A. Barrera